**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

SHARIE A. GRIFFIETH,  :

                Plaintiff,

  -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.  :

Case No. 3:09-cv-485

District Judge Timothy S. Black
Magistrate Judge Michael R. Merz

**REPORT AND RECOMMENDATIONS**

Plaintiff brought this action pursuant to 42 U.S.C. §405(g), as incorporated into 42 U.S.C. §1383(c)(3), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for supplemental security income SSI benefits (SSI), a claimant must file an application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits

prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 . If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSI on April 23, 2004, alleging disability from June 1, 1994 due to peripheral vascular disease, osteoporosis, asthma, and a heart condition. (Tr. 53-57; 83). Plaintiff's application was denied initially and on reconsideration. (Tr. 41-44; 47-49). Administrative Law Judge Melvin Padilla held a hearing, (Tr. 433-69), following which Judge Padilla found that Plaintiff was disabled as of August 25, 2008, but not before that date. (Tr. 15-32). Plaintiff sought review of the adverse part of Judge Padilla's decision and the Appeals Council denied that request. (Tr. 6). Judge Padilla's decision then became the Commissioner's final

decision.

In determining that Plaintiff was disabled as of August 25, 2008, but not before that date, Judge Padilla found that she has severe lumbar degenerative disc disease, peripheral vascular disease with history of surgery in 2004 and 2006, and possible depression, but that she does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 21, ¶ 2; Tr. 22, ¶ 3). Judge Padilla also found that Plaintiff has the residual functional capacity to perform a limited range of medium work. (Tr. 22-23, ¶ 4). Judge Padilla then used sections 203.18 (age 50-54) of the Grid as a framework for deciding and coupled with a vocational expert's (VE) testimony concluded that Plaintiff was not disabled prior to August 25, 2008. (Tr. 30, ¶ 9). Judge Padilla then applied section 203.10 (as of attaining age fifty-five) of the Grid and concluded that the Grid directed a finding that Plaintiff became disabled as of her fifth-fifth birthday. *Id.* Judge Padilla determined that Plaintiff was disabled as of August 25, 2008, but not prior to that date. (Tr. 31, ¶ 10).

The record reveals that Plaintiff has a long-standing history of neck, back, hip, and leg pain beginning in 1991, when she sustained a fall. *See,* Tr. 213. Long-term treating physician Dr. Spagnola has provided Plaintiff with treatment since at least 1997 for those impairments as well as for other general medical conditions and complaints. *See,* Tr. 234-36.

Plaintiff began experiencing more severe leg pain and a March 12, 2004, ultrasound revealed plaque suggestive of stenosis in Plaintiff's right carotid artery and mild to moderate stenosis of her iliac arteries. (Tr. 246-47). In May, 2004, Dr. Lowry performed a bilateral arterial angioplasty and stent placement. (Tr. 202-02). Post-operatively, Plaintiff complained of pain which she stated was significantly improved with the use of medication. (Tr. 199-200). In June, 2004, Plaintiff reported to Dr. Lowry that there was a "big difference" after her surgery, that she could now

do the dishes, her sexual functioning had improved, and that she had no chest pain or dyspnea. (Tr. 226).

Dr. Spagnola reported on May 25, 2004, that Plaintiff was "disabled with numerous medication conditions", that she suffered with coronary artery disease, chronic obstructive pulmonary disease, and depression, and that she had just undergone a stent placement bilaterally in the iliac arteries. (Tr. 237). Dr. Spagnola also reported that Plaintiff's conditions prevented her from pursuing any gainful employment. *Id.*

On October 12, 2004, Plaintiff consulted with physical medicine specialist Dr. Hoover of RehabMed Associates, Inc.[1] who reported that Plaintiff complained of pain "virtually everywhere", was able to walk about three steps in tandem before taking a misstep, had mild paracervical tenderness without tightness, minimal tightness in the periscapular tissue, and that her neurological examination was normal. (Tr. 213-15). Dr. Hoover also reported that Plaintiff's diagnoses were lumbar disk herniation, lumbar degenerative disc disease, polyarthralgia, and myalgia. *Id.* Dr. Hoover recommended that Plaintiff undergo further testing. *Id.*

An October 27, 2004, MRI of Plaintiff's cervical spine revealed no gross canal stenosis or neural foraminal narrowing, a small posterior inferior osteophyte at C4, and vertebral hemangiomas at C6 and C2. (Tr. 264-65).

Plaintiff underwent a physical therapy evaluation in November 2004 for her complaints of neck and shoulder pain, upper extremity weakness, and bilateral numbness and weakness. (Tr. 267-69). It was noted that Plaintiff was not able to heel or toe walk, had pain to

---

[1] Although Plaintiff and the Commissioner both refer to Dr. Duritsch, Dr. Hoover's associate at RehabMed Associates as having examined Plaintiff, it appears to the Court that Dr. Hoover's signature appears at the end of the report.

palpation C4 through C6, decreased range of lumbar spine motion, and hip tenderness. *Id.*

Plaintiff continued to received treatment from Dr. Spagnola. *See,* e.g., Tr.350, 354. On April 25, 2006, Dr. Spagnola reported that Plaintiff's diagnoses included COPD, peripheral vascular disease, carotid artery disease, moderate to severe lumbar disc disease, and depression. (Tr. 342-46). Dr. Spagnola also reported that Plaintiff had a decreased range of lumbar motion, was able to lift/carry up to ten pounds occasionally, sit for two hours in an eight-hour day and for two hours without interruption, and sit for three to four hours in an eight-hour day and for two hours without interruption. *Id.* Dr. Spagnola opined that Plaintiff was unemployable. *Id.*

Dr. Lowry reported on June 15, 2006, that Plaintiff reported progressive bilateral leg pain originating in the buttocks and radiating to her calves, that her gait was slow, her femoral pulses light, and her remaining lower extremity pulses not palpable. (Tr. 276-82). Dr. Lowry identified Plaintiff's diagnosis as peripheral vascular disease with claudication and recurrent stenosis. *Id.*

Plaintiff consulted with vascular surgeon Dr. Simone on July 10, 2006, at which time Dr. Simone reported that Plaintiff exhibited decreased sensation of both feet, that she had light femoral pulses, and that she had absent lower pulses.(Tr. 328-30). Dr. Simone identified Plaintiff's diagnosis as peripheral vascular disease with significant claudication of the lower extremities, right more than left. *Id.*

A July 26, 2006, arteriogram revealed a right iliac artery occlusion and stenosis of the left common femoral artery. (Tr. 285-87).

On August 11, 2006, Plaintiff underwent a bilateral femoral cut-down angioplasty with iliac stent placement and a femoral bypass with graft which Dr. Simone performed. (Tr. 300-12). Post-operatively, Plaintiff reported that her leg pain was improved and that her legs felt

6

"heavy". (Tr. 325).

A September 12, 2006, lumbar CT revealed osteoarthritic changes in the lower lumbar spine with narrowing of the L5-S1 disc space, moderate central disc protrusions at L4-5 and L5-S1 with compression of the adjoining thecal space, and narrowing of the neural foramina at L4-5. (Tr. 314).

On October 21, 2006, Plaintiff underwent a physical therapy evaluation at which time it was noted that she had decreased ranges of lumbar spine motion and decreased strength secondary to pain. (Tr. 319-21). The therapist issued a TENS unit to Plaintiff. *Id.*

Plaintiff continued to receive treatment from Dr. Spagnola through 2006, 2007, and early 2008. *See, e.g.,* Tr. 340-49, 389-90, 399. On June 23, 2008, Dr. Spagnola prescribed a wheelchair for Plaintiff because she had severe peripheral vascular disease with failed surgeries, poor circulation, and a musculoskeletal condition that prevented her from flexing ninety degrees at the knee. *Id.*

Over time, Dr. Spagnola treated Plaintiff for depression by prescribing medication. *See, e.g.,* Tr. 354. Examining psychologist Dr. Halmi reported on December 19, 2007, that Plaintiff complained of depression since childhood, was hospitalized at Dayton State Hospital when she was seventeen years old, alleged that she had attempted suicide seven times, was not currently taking any medication for depression, and was not participating in psychotherapy. (Tr. 378-85). Dr. Halmi also reported that Plaintiff's speech was normal, her affect was depressed, she sat with a tense posture, she was restless and fidgety which was likely due to a combination of her pain and anxiety, and that she was pessimistic and apprehensive about her future. *Id.* Dr. Halmi noted that Plaintiff was somatically focused, appeared to experience significant pain as evidenced by wincing and

7

restlessness, was alert and oriented, her attention and concentration were in the moderately impaired range, her memory was in the slightly impaired range, her intellectual abilities likely ranged in the low average range, and that Plaintiff was easily overwhelmed, which affected her judgment. *Id.* Dr. Halmi identified Plaintiff's diagnoses as major depressive disorder, recurrent, severe without psychotic features, dysthymic disorder, anxiety disorder, NOS, pain disorder associated with both psychological factors and a general medical condition, and personality disorder NOS with histrionic, dependent, and borderline features, and he assigned Plaintiff a GAF of 40. *Id.* Dr. Halmi opined that Plaintiff's ability to understand and remember simple one and two step instructions was not impaired; her ability to attend, concentrate, persevere, and maintain pace to complete an eight-hour workday was seriously impaired; her ability to interact with others was seriously impaired; and her ability to adjust to the daily stressors associated with routine work was seriously impaired. *Id.*

The medical advisor (MA) testified at the hearing that Plaintiff did not meet or equal the Listings, that she was able to perform simple, two-step jobs, and that she should not have interaction with the general public. (Tr. 448-60). The MA also testified that there were no inconsistencies in Dr. Halmi's evaluation in terms of his ratings of severity and what his impression was based on her presentation. *Id.*

In her Statement of Errors, Plaintiff alleges that the Commissioner erred by rejecting Dr. Spagnola's opinion and failing to consider her impairments in combination. (Doc. 8).

"In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards." *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th Cir. 2009). "One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-

treating physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations."

*Id.*, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, (6th Cir. 2004), *quoting,* 20 C.F.R. § 404.1527(d)(2).

"The ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley,* 581 F.3d at 406, *quoting, Wilson,* 378 F.3d at 544. "On the other hand, a Social Security Ruling[2] explains that '[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Blakley, supra, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). "If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,*582 F.3d at 406, *citing, Wilson,* 378 F.3d at 544, *citing* 20 C.F.R. § 404.1527(d)(2).

---

FN 1. Although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent, final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

"Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Blakley,* 581 F.3d at 406, *citing,* 20 C.F.R. §404.1527(d)(2). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley,* 581 F.3d at 406-07, *citing,* Soc.Sec.Rule 96-2p, 1996 WL 374188 at *5. "The *Wilson* Court explained the two-fold purpose behind the procedural requirement:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."

*Blakley,* 581 F.3d at 407, *citing, Wilson,* 378 F.3d at 544. "Because the reason-giving requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record.'" *Blakley, supra, quoting, Rogers v. Commissioner of Social Security.,* 486 F.3d 234, 253 (6th Cir. 2007)(emphasis in original).

Although Dr. Spagnola opined that Plaintiff is disabled, his opinions are not supported by his objective findings and are inconsistent with other evidence in the record. For

10

example, in May and November, 2004, although he opined that Plaintiff was disabled, Dr. Spagnola provided absolutely no clinical findings to support those opinions. In addition, although Dr. Spagnola opined that Plaintiff's disability was due, at least in part, to a pulmonary-related impairment, there is no evidence in the record that Plaintiff had ever been diagnosed with pulmonary disease.

Dr. Spagnola's opinions are inconsistent with the reports and findings of other medical experts of record. For example, Dr. Lowry noted after Plaintiff's 2004 vascular surgery that Plaintiff reported an improvement in her condition and Dr. Simoni, who performed Plaintiff's 2006, vascular surgery reported that Plaintiff was happy with the results and was able to walk without claudication. Further, Dr. Hoover reported that Plaintiff had, at worst, mild or minimal findings and that her neurological examination was normal. Additionally, when Plaintiff was evaluated by physical therapists in November 2004 and October 2006, the reported findings were, at worst, mild. Finally, Dr. Spagnola's opinions are inconsistent with the opinions of the reviewing physicians. *See,* Tr. 207-12; 253-61.

Under these facts, the Commissioner did not err by rejecting Dr. Spagnola's opinions that Plaintiff is disabled.

Plaintiff argues next that Commissioner erred by failing to consider her impairments in combination.

The Act requires the Commissioner to consider the combined effects of impairments that individually may be nonsevere, but which in combination may constitute a medically severe impairment or otherwise evince a claimant's disability. *Foster v. Bowen,* 853 F.2d 483, 490 (6th Cir. 1988) (citation omitted). A disability may result from multiple impairments, no one of which alone

11

would constitute a full disability. *Loy v. Secretary of Health and Human Services,* 901 F.2d 1306 (6th Cir. 1990). An ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination, where the ALJ specifically refers to a "combination of impairments" in finding that the plaintiff does not meet the Listings. *Id.* (citation omitted).

The Court notes that in determining that Plaintiff was not disabled prior to August 25, 2008, Judge Padilla consistently referred to her impairments in the plural. *See, e.g.,* Tr. 21, 22, 29, 30. Moreover, Judge Padilla specifically referred to Plaintiff's "combination of impairments" in determining that Plaintiff did not satisfy the Listings. (Tr. 22, ¶ 3).

Plaintiff suggests that the Commissioner erred by failing to find that she is disabled by a mental impairment. However, as Judge Padilla noted, the record contains absolutely no evidence that Plaintiff received mental health treatment other than prescriptions for medication from Dr. Spagnola. However, Dr. Spagnola is not a mental health expert. In addition, the Commissioner was not required to accept Dr. Halmi's conclusions. First, Dr. Halmi was not a treating source. Secondly, his opinion is inconsistent with the MA's opinion.

Under these facts, the Commissioner did not err by failing to consider Plaintiff's impairments in combination or in his evaluation of Plaintiff's alleged mental impairment.

The Court's duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v.*

*Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939).  The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

October 4, 2010.

*s/ Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).